# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MELINDA D.,**

        **Plaintiff,**

v.                                  **Civil Action 2:24-cv-3871**
                                        **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Melinda D., brings this action under 42 U.S.C. § 405(g) and seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court **GRANTS** Plaintiff's Statement of Errors (Doc. 8), **REVERSES** the Commissioner of Social Security's non-disability finding, and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.    BACKGROUND**

Plaintiff protectively filed her applications for DIB on August 9, 2020, and for SSI on November 5, 2021, alleging disability beginning on February 1, 2020, due to allergies, anxiety, asthma, insomnia, and migraines. (R. at 245–46, 253–59, 278). After her applications were denied initially and on reconsideration, Administrative Law Judge Stacy Appleton (the "ALJ") held a hearing. (R. at 48–77). On September 28, 2023, the ALJ denied benefits in a written decision. (R. at 24–47). The Appeals Council then denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. at 10–16).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on August 21, 2024, (Doc. 1), and the Commissioner filed the administrative record on October 16, 2024, (Doc. 7).  The matter is ripe for review.  (*See* Docs. 8, 10, 11).

### A.    Relevant Hearing Testimony

Plaintiff testified at the administrative hearing that she cannot work because of her asthma:

> [I]n 2015 I was diagnosed with asthma and since then it progressively became much more of a handicap for me. Even in my sit down job for the village of Utia, I started having major attacks. They would have to take me via squad frequently to the hospital, with a three to four day stay usually. At first the physicians didn't know what was causing it. They thought it was cardiac and eventually after several months they diagnosed me with asthma. After that it took approximate a year to acquire any medicine that would help reduce the attacks, because sometimes the regurgitation they felt was happening silently. However, it did not get it may have not helped. I am having major issues now with that and I am scheduled to have a procedure to check into that actually next week, but the attacks became huge and I was hospitalized many times since then. It is usually three to four days.

(R. at 58).

According to Plaintiff, her asthma attacks are random but can occur up to six times per month.  (R. at 59).  Plaintiff also testified that these attacks have increased in frequency, and she requires a couple hours of rest to recover from each attack.  (R. at 69, 71).  These attacks can be triggered by odors alone, (R. at 65), and at the hearing, Plaintiff testified that her last hospitalization related to her asthma lasted nine days, (R. at 60).  Sometimes, her attacks can be controlled with a nebulizer. (*Id.*).  But her medications also cause nausea, dizziness, headaches, and shakiness. (*Id.*). Further, Plaintiff testified that, in the past, her asthma attacks caused her to miss work frequently. (*Id.*).  Plaintiff estimates that she can walk ten steps before needing to rest, stand for three to five minutes at once, and sit for ten to fifteen minutes at a time. (R. at 62–63).  And she cannot carry more than ten pounds because the exertion causes her shortness of breath. (*Id.*).  Finally, Plaintiff testified that she cannot drive after suffering an asthma attack.  (R. at 65).

**B. Relevant Medical Evidence**

The ALJ summarized the medical records as to Plaintiff's physical impairments as follows:

Prior to the established onset date, on January 14, 2020, [Plaintiff] presented for a primary care visit with complaints of wheezing, coughing, and pain in her chest; she was noted to use a Nebulizer at home (14F/14). She reported her symptoms began during the prior week, following exposure to dust in a factory (Id.). The associated physical examination revealed normal findings, except a dry cough was noted (Id. at 16). Her diagnoses included Moderate Persistent Asthma with acute exacerbation, which was treated conservatively with prescribed medication (Id.).

After the alleged onset date, in March 2020, [Plaintiff] presented for primary care visit for follow-up and medication refills (14F/10). Regarding Asthma, she reported experiencing flares 1 to 2 times per month, but she reported there were no emergency care hospital visits (Id.). The associated physical examination revealed normal findings, including normal respiratory findings (Id. at 12). Her diagnoses included Moderate Persistent Asthma with acute exacerbation and Intractable Migraine with aura, which are treated conservatively with prescribed medications (Id. at 13). Moreover, the above-discussed evidence supports limiting [Plaintiff] to performing work at the light level of exertion, consistent with the limitations found within the above-stated RFC, as the record supports her complaints of experiencing breathing problems and migraines, despite conservative care.

Next, [Plaintiff] presented for a telehealth primary care visit on June 11, 2020, and reported good compliance with her treatment regimen for her migraine headaches (14F/7). In this regard, she reported that her migraines were well controlled (Id.). She was again diagnosed with Intractable Migraine with aura and was treated conservatively with prescribed medication (Id. at 8). Thereafter, on September 8, 2020, the record documents she presented for primary care treatment with complaints of a migraine headache; she reported that compliance with her treatment regimen (14F/3). Similarly, the record notes that she felt her migraines were well controlled with her prescribed medications, and she requested refills (Id.). However, she reported experiencing asthma flares 1 to 2 times per month, and she requested a refill of Symbicort (Id.). The associated physical examination revealed normal findings, including normal respiratory findings (Id. at 5-6). Her diagnoses included Intractable Migraine with aura, Obesity, and Moderate Persistent Asthma with acute exacerbation (Id. at 6). \*\*\*

In October 2020, [Plaintiff] presented for primary care treatment as a new patient (8 F/11). The record notes that she discussed weight loss, and she endorsed a history of migraine headaches (Id.). Moreover, the associated physical examination revealed normal findings, including normal mental status findings and a normal gait, along with normal respiratory neurologic, and neuropsychiatric findings (Id. at 13-14). The record documents she was treated conservatively with prescribed medications (Id. at 14).

Thereafter, [Plaintiff] presented for follow-up of her medical conditions on November 2, 2020; she was diagnosed with conditions including Obesity and Intractable Migraine (8F/7-10). The record documents these conditions were treated conservatively with prescribed medications (Id.). Further, the associated physical examination revealed normal findings, including normal respiratory, neurologic, and normal psychiatric findings (Id. at 9). Next, on December 2, 2020, she presented by telephone for primary care treatment; her diagnoses included Intractable Migraine with aura, Asthmatic Bronchitis, and Obesity (8F/4). She was treated conservatively with prescribed medications (Id. at 6).***

Subsequently, on September 1, 2021, [Plaintiff] presented for primary care visit and reported that her headaches had improved, as she was experiencing of approximately 3 to a 6 episodes per month (12F/43). The associated physical examination revealed normal findings, including normal respiratory musculoskeletal, and neuropsychiatric findings (Id. at 45).

Thereafter, in March 2022, [Plaintiff] presented to establish primary care, and she endorsed concerns including weight gain, migraines, and asthma attacks (12F/48). Specifically, she reported she was having 3 episodes of migraine headaches per month (Id.). The associated physical examination revealed normal findings, including normal respiratory findings (Id. at 50). She was diagnosed with conditions including Intractable Migraine with aura and Moderate Persistent Asthma with acute exacerbation; additionally, she was noted to have borderline control of her asthma symptoms (Id.).

Next, the record documents [Plaintiff] was hospitalized on April 6, 2022 for acute hypoxic respiratory failure, due to Asthma Exacerbation; additionally diagnoses included Obesity and a history of Migraine Headache (6F/2-7). She was noted to have experienced 2 weeks of wheezing and dyspnea, which waxed and waned in intensity (Id. at 9). Notably, an x-ray examination of her chest failed to reveal evidence of acute cardiopulmonary disease (Id. at 13-14, 46). Moreover, upon discharge on April 9, 2022, the record notes she was treated conservatively with prescribed medications (Id. at 4-5). Subsequently, on April 19, 2022, the record notes that a physical examination revealed normal respiratory findings (12F/37).

***

Thereafter, on June 7, 2022, [Plaintiff] presented for a primary care visit and reported she was doing well with her treatment regimen for Asthma (12F/28). The associated physical examination revealed normal findings, including a normal gait and normal psychiatric findings (Id. at 31). Her diagnoses included Severe Persistent Asthmatic Bronchitis (Id.). Next, on July 5, 2022, she presented for a Pulmonary Function Test that revealed grossly normal findings, including spirometry values in the normal ranges; additionally, the test revealed non-listing level results (11F/37-39). Consequently, the above-noted objective findings support

the environmental limitations found within the above-stated RFC, as said findings support that [Plaintiff] benefits from compliance with her treatment regimen.

During a primary care visit on November 21, 2022, [Plaintiff] reported that the severity of her asthma was moderate and that the condition was improving, as her symptoms were relieved by inhaler use and supplemental oxygen, along with resting and oral steroids (11F/5). Further, regarding obesity, weight loss of 10 pounds was noted with her treatment regimen (Id.). She was diagnosed with Severe Persistent Asthmatic Bronchitis and Class II Severe Obesity, which continued to be treated conservatively with prescribed medications (Id. at 9). Moreover, the record notes she also reported good compliance and good symptom control in December 2022 (12F/9). Notably, the associated physical examination revealed normal findings, including a normal gait and normal neuropsychiatric findings, except she was noted to be obese (Id. at 11).

Subsequently, on January 20, 2023, [Plaintiff] presented for evaluation of dyspnea; she was noted to have a history of asthma and allergies (9F/2). Episodes of dyspnea were noted to be triggered by exercise, exposure to smells, and cold air (Id.). Upon examination of her voice was noted to be mildly raspy with frequent throat clearing and a cough; otherwise, the findings were normal (Id. at 3). Her diagnoses included Asthma (Id. at 4). Thereafter, on January 23, 2023, the record notes she was seeing another pulmonologist and had different treatment for her asthma; consequently, she was noted as doing much better (10F/1). Notably, the associated physical examination revealed normal findings (Id. at 4).

Moreover, from early to mid-2023, the record documents [Plaintiff]'s conservative care for conditions including Obesity and Severe Persistent Asthma (12F). Regarding obesity, on June 5, 2023, good compliance with treatment and fair symptom control were reported (Id. at 3). However, regarding her diagnosis of Migraine Headache, she was noted to have been out of medication since March and reported her migraines were coming back frequently (Id.). The associated physical examination revealed normal findings, except wheezes were noted (Id. at 6). Further, the above-discussed evidence supports the finding that [Plaintiff] benefits from compliance with her treatment regimen, which is generally effective in managing her severe medical conditions.

Next, on July 12, 2023, the record documents [Plaintiff] was hospitalized, due to an acute exacerbation of asthma (15F/1). Notably, the record notes that she did not follow avoidance strategies and continued to mow her large yard (Id.). Additionally, her symptoms were noted to have increased during the prior week (Id.). Her complaints included cough, chest pain, and wheezing (Id. at 2). Abnormal respiratory findings were noted during the associated physical examination (Id. at 5). An x-ray examination of her chest failed to reveal evidence of acute findings (Id. at 43). Further, the record notes she was discharged with prescribed medications on July 21, 2023 (Id. at 11-12). Overall, in addition to the opinion evidence and administrative findings analyzed below, the above-summarized

> evidence supports limiting [Plaintiff] to performing work at the light level of exertion, consistent with the limitations found within the above-stated RFC, as the record fails to support functional limitations that would preclude the performance of work activity assessed therein, while documenting a history of conservative care and regularly documenting grossly normal physical examination findings.

(R. at 34–36).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through September 30, 2025. (R. at 28). She determined that Plaintiff has not engaged in substantial gainful activity since February 1, 2020, the alleged onset date. (*Id.*) The ALJ further determined that Plaintiff suffers from the severe impairments of "Asthma/Chronic Obstructive Pulmonary Disease, Migraines, and Obesity." (*Id.*). But the ALJ concluded that none of Plaintiff's impairments, either singly or in combination, meet or medically equal a listed impairment. (R. at 31).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and/or walk for 4 hours in an 8-hour work day; she cannot climbing ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she can occasionally balance, as that term is defined in the Dictionary of Occupational Titles (DOT); she can occasionally stoop, kneel, crouch; she cannot crawl; she must avoid exposure to extreme cold, humidity, vibration, and pulmonary irritants, including odors, dusts, gases, fumes, and poor ventilation; she must avoid exposure to hazards, including dangerous machinery, unprotected heights, and commercial driving; and she is limited to working in an environment with no more than a moderate noise level, as defined in the Selected Characteristics of Occupations (SCO).

(R. at 33).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*). Accepting the vocational expert's hearing testimony, the ALJ concluded that Plaintiff can perform her past

6

relevant work as a billing collections clerk. (R. at 41–42). Therefore, she concluded that Plaintiff has not been disabled within the meaning of the Social Security Act since February 1, 2020. (R. at 42).

## II. STANDARD OF REVIEW

A claimant's RFC is an assessment of "the most [a claimant can still do despite [her]] limitations." 20 C.F.R. § 404.1545(a)(1). An RFC assessment must be based on all the relevant evidence in a claimant's file. *Id.* To that end, the governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5).

For medical opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Social Security Administration's ("SSA")] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5). Though there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2).

When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other

7

medical sources and non-medical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). And, although an ALJ may discuss how she evaluated the other factors, generally she is not required to do so. *See* 20 C.F.R. § 404.1520c(b)(2).

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). In the end, if the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**III.   DISCUSSION**

Plaintiff challenges only the ALJ's analysis of nurse practitioner Amber Morrison's ("CNP Morrison") medical opinion statement. (Doc. 8 at 10–13; *see, e.g.*, R. at 470 (listing CNP Morrison as Plaintiff's primary care physician)). The ALJ found the opinion to be "non-persuasive":

> **** Amber Morrison, CNP, a treating source, [] completed a medical opinion statement on June 21, 2022; she diagnosed [Plaintiff] with Severe Persistent Asthma (7F). The nurse practitioner opined that [Plaintiff] is unable to work, due to being very sensitive to environmental triggers (Id. at 2-3). Accordingly, the undersigned finds the nurse practitioners opinion to be non-persuasive, as said opinion is neither consistent with nor supported by the totality of the record, which documents a history of conservative care for [Plaintiff]'s respiratory impairments. Alternatively, the undersigned finds that the exertional and environmental limitations found within the above-stated RFC adequately account for and accommodate the functional limitations resulting from [Plaintiff]'s severe

>respiratory impairments by limiting the nature of her work activities, as stated therein. Further, the undersigned notes that the above discussed record supports a finding that [Plaintiff] benefits from compliance with her treatment regimen, which is generally effective at managing her respiratory problems.

(R. at 38).

Citing this analysis, Plaintiff contends that the ALJ failed to explain how she considered supportability for CNP Morrison's opinion. (*Id.* at 10–13; Doc. 11 at 1–3). The Court agrees.

"[S]upportability is the extent to which a medical source's own objective findings and supporting explanations substantiate or support the findings in the opinion." *Sallaz v. Comm'r of Soc. Sec.*, No. 4:22-cv-1239, 2023 WL 5043702, at *9 (N.D. Ohio June 26, 2023) (citing 20 C.F.R. § 404.1520c(c)(2)), *report and recommendation adopted*, No. 4:22-cv-1239, 2023 WL 5266613 (N.D. Ohio Aug. 16, 2023); *see also* 20 C.F.R. § 404.1520c(c)(1). Here, the only discussion of support is the ALJ's comment that CNP Morrison's opinion is "neither consistent with nor supported by the totality of the record, which documents a history of conservative care for [Plaintiff's] respiratory impairments . . . [and] supports a finding that [Plaintiff] benefits" from her current treatment regime. (R. at 38). But fundamentally, this conflates consistency with supportability. Said differently, the ALJ discussed the consistency factor by comparing CNP Morrison's opinion with the record as a whole. (*Id.*). But she did not discuss supportability by referencing any explanations or evidence underlying CNP Morrison's opinion. (*See id.*); *William G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022) (finding the ALJ did not properly analyze supportability where his comments merely compared the medical source's opinion with the record as a whole), *report and recommendation adopted*, No. 2:22-cv-213, 2022 WL 16745337 (S.D. Ohio Nov. 7, 2022); *Crystal E. J. v. Comm'r of Soc. Sec.*, No. 2:21-cv-4861, 2022 WL 2680069, at *7–8 (S.D. Ohio July 12, 2022) (stating comparisons to the record as a whole go only to the consistency of an opinion, not supportability),

*report and recommendation adopted*, No. 2:21-cv-4861, 2022 WL 2974734 (S.D. Ohio July 27, 2022).  Because the regulations require the ALJ to explain how she considered the supportability factor, her silence here is reversible error.  *See generally Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (acknowledging that ALJs must consider supportability and consistency and explain how those factors were considered).

Even so, the Commissioner argues that the ALJ's earlier discussion of Plaintiff's medical history is enough.  (Doc. 10 at 6).  That is, the Commissioner contends that the rest of the ALJ's opinion shows whether "the evidence provided and reviewed by [CNP] Morrison could support her conclusions."  (*Id.*).  But the ALJ never made that point.  (*See* R. at 38 (stating only that the record does not support CNP Morrison's opinion, but not pointing to any evidence reviewed by CNP Morrison or any explanations provided in her opinion)).  Nor did the ALJ explain how that medical evidence undermines CNP Morrison's opinion.  (*See* R. at 38 (generally stating that CNP Morrison's opinion is inconsistent with the record, but not discussing the basis for CNP Morrison's findings), 33–36 (discussing Plaintiff's medical records and medical history, but not connecting that evidence to or mentioning CNP Morrison's opinion)).  In essence, the Commissioner's argument asks this Court to affirm the ALJ's decision based on *post hoc* rationalizations instead of the "basis articulated by the [ALJ herself]."  *Johnson v. Comm'r of Soc. Sec.*, 193 F.Supp.3d 836, 847 (N.D. Ohio 2016) (citing *Berryhill v. Shalala*, 4 F.3d 993 (6th Cir. 1993)); *see, e.g.*, *Stepp v. Comm'r of Soc. Sec.*, No. 2:18-cv-641, 2019 WL 3369147, at *6 (S.D. Ohio July 26, 2019) (rejecting a similar argument as a "*post hoc* rationalization" and collecting cases), *report and recommendation adopted*, No. 2:18-cv-641, 2019 WL 3804706 (S.D. Ohio Aug. 13, 2019).  The Court cannot do so.

10

Plus, the Commissioner's argument ignores that CNP Morrison is Plaintiff's primary care physician. (*See, e.g.*, R. at 470, 590, 598, 601–02 (all noting that CNP Morrison is Plaintiff's primary care physician)). As such, CNP Morrison's findings may be based on her experiences treating Plaintiff, not just a review of Plaintiff's past medical records from other sources. (*See* R. 555–57 (medical source statement by CNP Morrison completed in June 2022), 637 (medical test results ordered by CNP Morrison in June 2022), 668–70 (appointment notes from June 2022 by CNP Morrison), 671–73 (same), 674–82 (medical notes by CNP Morrison from April 2022), 683–87 (same for appointments in 2021 and early 2022)). But because the ALJ neglected to shed further light on her analysis, the Court cannot discern how she considered the supportability of CNP Morrison's decision. Nor can the Court "reweigh the evidence" and make findings on the ALJ's behalf now. *Mullins v. Sec. of Health and Human Servs.*, 680 F.2d 472 (6th Cir. 1982) (noting that in social security cases, a court's "task is not to reweigh the evidence").

Clouding her analysis even further, the ALJ did not cite specific medical records when dismissing CNP Morrison's opinion. (*See* R. at 38); (Doc. 11 at 3 (briefing this issue)). Instead, the ALJ merely gestures to the record as a whole to refute CNP Morrison's findings. (R. at 38 (finding CNP Morrison's opinion inconsistent with "the totality of the record")). To be clear, when the ALJ cites to "the totality of the record," she cites over four hundred pages of medical evidence. (*See* R. at 342–787). The ALJ is not required to repeat her earlier discussion of Plaintiff's medical history, but "[a]s a rule, the ALJ must build an accurate and logical bridge between the evidence and [her] conclusion." *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824, at *4 (S.D. Ohio Nov. 15, 2011), *report and recommendation adopted*, No. 1:10-cv-734, 2011 WL 6122758 (S.D. Ohio Dec. 8, 2011). This includes "articulat[ing] with specificity reasons for the findings and conclusions that . . . she makes." *Id.* Here, the ALJ's conclusory references

11

to Plaintiff's medical history, combined with the ALJ's failure to discuss the supportability factor, leaves the Court to guess at the basis for her conclusion regarding CNP Morrison's opinion. (*See* R. at 38); *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) ("[T]he ALJ's decision must still say enough to allow the appellate court to trace the path of [her] reasoning." (internal quotation omitted)).

Lastly, the Commissioner does not raise harmless error, and the Court finds that the ALJ's mistakes matter here. (*See generally* Doc. 10). To begin, the ALJ did not comply with 20 C.F.R. § 404.1520c(c)(1) by discussing how she considered supportability for CNP Morrison's opinion. (R. at 38). And CNP Morrison concluded that Plaintiff's respiratory symptoms preclude her from completing basic tasks. (R. at 556–57 (noting severe environmental triggers for asthma attacks, mentioning past hospitalizations, and saying that some of these hospitalizations occurred during Plaintiff's work shifts)). So, had the ALJ properly analyzed the supportability of CNP Morrison's opinion, she could have determined that the opinion deserved more weight and that Plaintiff's RFC required additional limitations. *See Bowen v. Comm'r of Soc Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) ("Even if supported by substantial evidence . . . a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). Plus, the ALJ's conclusory citations to the record in this portion of her opinion do not provide any further insight on her supportability analysis. (*See id.*; R. at 33–36). Given these issues, the Court cannot conduct the required meaningful review to determine if substantial evidence supports the ALJ's decision. *See Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-cv-310, 2022 WL 17820565, at *4 (S.D. Ohio Dec. 20, 2022) (finding reversible error where the ALJ failed to discuss the supportability factor and did not provide proper explanations for disregarding certain limitations); *Wilson C. v. Comm'r of Soc.*

12

*Sec.*, No. 3:20-cv-457, 2022 WL 4244215, at *8 (S.D. Ohio Sept. 15, 2022) (finding an ALJ's failure to discuss supportability was not harmless error where it prevented the court from conducting a meaningful review); *Crystal E.*, 2022 WL 2680069, at *8 (same).

On remand, the ALJ ultimately may reach the same conclusion on CNP Morrison's opinion and Plaintiff's overall RFC. But the ALJ must "show . . . her work" and explain with sufficient detail how she evaluated supportability for each medical opinion. *Shanan v. Comm'r of Soc. Sec.*, No. 2:23-cv-1678, 2024 WL 3740443, at *7 (S.D. Ohio Aug. 9, 2024) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp.3d 900, 909 (E.D. Mich. Aug. 13, 2021)). As the ALJ's opinion stands, the Court cannot understand how she analyzed supportability for CNP Morrison's opinion or whether she did so at all. Therefore, remand is required.

### IV. CONCLUSION

The Court **GRANTS** Plaintiff's Statement of Errors (Doc. 8) and **REVERSES** the Commissioner's non-disability finding. This case is **REMANDED** to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

IT IS SO ORDERED.

Date: January 17, 2025 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

13